UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

Case Number:  09-14258-CIV-MARTINEZ-LYNCH

NATIONWIDE MUTUAL INSURANCE
COMPANY,

    Plaintiff,

vs.

LANG MANAGEMENT, INC.,

    Defendant.
_____/

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment **(D.E. No. 22)** and Defendant's Motion for Summary Judgment on Duty to Defendant **(D.E. No. 23)**. Plaintiff brought the above-captioned action seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that it has no duty to defend and no duty to indemnify Defendant pursuant to a commercial general liability insurance policy and a commercial umbrella liability insurance policy for an underlying lawsuit involving the use of Diuron on a golf course. The Court has carefully considered the motions and is otherwise duly advised.

**I. Factual Background**

**A. The Underlying Suit**

On April 23, 2009, Defendant Lang Management, Inc. ("Defendant" or "Lang") was sued in Florida Circuit Court along with PGA Village Property Owners' Association, Inc. ("PGA") by HFM, Inc. d/b/a Legacy Golf and Tennis Club ("Legacy"). The underlying suit alleges that

Legacy, which owns the Legacy Golf Course, hired PGA to maintain the lakes within the golf course and PGA hired Defendant Lang to perform maintenance on the golf course. The underlying suit further alleges that in October 2008, Lang hired Lake & Wetland Management ("L&W") to perform service, maintenance, and inspection of the lakes within the boundaries of the Legacy Golf Course. (Lang disputes that it hired L&W, as alleged in the underlying suit.)

The suit asserts that L&W contaminated the lakes with an herbicide, Diuron, that is toxic to humans, animals, and plant life. Because the water used by the golf course's irrigation system originates in the lakes, the underlying suit alleges that Diuron-contaminated water was sprayed all over the golf course. Diuron has a toxic residual half-life of up to three years in the water and soils to which it is applied.

The underlying suit asserts claims of vicarious liability and negligent hiring and supervision against Lang. The suit asserts that Lang breached its duty to hire a reasonably competent company for maintenance by hiring L&W. It also asserts that Lang breached its duty to supervise by failing to supervise L&W so as to ensure "that no herbicide injury . . . would ensue" and "that no improper chemicals were used," and by failing to mitigate the damages caused by Diuron. *See* (D.E. No. 22-4). The underlying complaint alleges that as a result of these breaches, the underlying plaintiff suffered property damage and resultant costs, including loss of memberships at the golf club.

**B. The Policies**

Plaintiff Nationwide Mutual Insurance Company ("Plaintiff" or "Nationwide") insured Defendant Lang under a commercial general liability insurance policy ("general liability policy") bearing policy number 77PR712802-3002 and a commercial umbrella policy ("umbrella policy")

for the policy period from February 17, 2008 and February 17, 2009 bearing the policy number 77CU-712-802-3003 (collectively "the policies"). Both policies contain a Pollution Exclusion, which provides:

> f. Pollution
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. . . .
> (2) Any loss, cost or expense arising out of any:
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants;" . . .

The policies define "pollutant" to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

## II. Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S.

at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the

nonmoving party's case." *Id*. at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

As an insurer, if Nationwide has a duty to defend against even one claim in the underlying suit, then Nationwide must defend against the entire complaint, including the uncovered claims. *See Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guar. Co.*, 696 So.2d 907, 910 (Fla. 3d DCA 1997). At issue in this motion is whether the claim for negligent hiring and supervision in the underlying suit is covered under the policies or whether it is excluded pursuant to the policies' pollution exclusion.[1] If the policies' pollution exclusion applies to the claim as it appears in the underlying complaint, then Nationwide does not have a duty to defend in the underlying suit. *See Nat. Union Fire Ins. Co. v. Lennox Liquors, Inc.*, 358 So.2d 533, 535 (Fla. 1977) ("The allegations of the complaint govern the duty of the insurer to defend" and the complaint must "allege facts which would bring the cause within the coverage of the insurance policy" in order for there to be a duty to defend); *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) ("[t]he duty to defend depends solely on the facts and legal theories

---

[1] The Defendant has conceded that Diuron is a "pollutant" under the policies and that pollution as defined in the policies' pollution exclusion was the but for cause of the property damage alleged in the underlying complaint.

alleged in the pleadings and claims against the insured.") (quoting *Nova Casualty Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006)).[2] If pollution exclusion does not apply to the negligent hiring and supervision claim, then Nationwide does have a duty to defend. *See id.*

Under the terms of the policies, there are two ways that the pollution exclusion could apply. One way the claim could fall under the pollution exclusion is if it is for "bodily injury" or "property damage" that was caused by the pollution. (D.E. No. 22-10 at NW_111.) The other way is if the claim is for "[a]ny loss, cost or expense" that "aris[es] out of" any "[r]equest, demand, order or statutory or regulatory requirement" that the "insured or others . . . monitor . . . or in any way respond to, or assess the effects of" pollutants. *Id*.

With respect to the first prong of the pollution exclusion, the claim for negligent hiring and supervision does seek damages relating to "property damage." To that extent, it is barred by the pollution exclusion. However, it also seeks damages for loss of membership fees. That portion of the pollution exclusion excludes only claims for "bodily injury" and "property damage," not for resultant economic damages. *See Estate of Tinervin v. Nationwide Mut. Ins. Co.*, 23 So.3d 1232, 1236 (Fla. 4th DCA 2009) ("Exclusionary clauses are strictly construed.") (internal citations omitted). Accordingly, the Court will consider whether the claim for negligent hiring and supervision falls under the second prong of the pollution exclusion.

As stated above, the pollution exclusion excludes "[a]ny loss, cost or expense" that "aris[es] out of" any "[r]equest, demand, order or statutory or regulatory requirement" that the

---

[2] Defendant Lang asserts that it did not hire L&W. This, however, is immaterial to whether Plaintiff Nationwide has a duty to defend. *See Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 443 (Fla. 2005) ("[w]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend.") (internal citations omitted).

"insured or others . . . monitor . . . or in any way respond to, or assess the effects of, 'pollutants'." (D.E. No. 22-10 at NW_111.)  It is undisputed that Diuron is a pollutant under the policy.  The Florida Supreme Court has adopted the "general consensus" regarding the phrase "arising out of" and has held that the phrase "should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'—that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 536 (Fla. 2005) (quoting *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir.1998)); *see also James River*, 540 F.3d at 1275 (applying this standard to an analysis of a pollution exclusion in a Florida insurance case).

In this case, the negligent hiring and supervision claim arises from a request or demand that "the insured or others" —which is to say, Lang or L&W—monitor, respond to, or assess the effects of the herbicide used on the golf course.  The exclusion explicitly includes losses caused by the obligations of "the insured or *others*," thus encompassing the possibility that Defendant Lang might be liable for losses related to L&W's obligation regarding a pollutant.  (D.E. No. 22-10 at NW_111) (emphasis added).  The exclusion therefore includes losses "arising out of" L&W's actions.  Furthermore, unlike the first prong of the pollution exclusion, this portion of the exclusion is written in terms of the pollutant itself, rather than the dispersal of the pollutant.  The exclusion accordingly includes obligations relating to the pollutant, such as an obligation to "monitor" its use, that were incurred prior to the actual dispersal of the pollutant.  Therefore, Defendant Lang's duty not to negligently hire a subcontractor that uses Diuron is encompassed within the pollution exclusion.  No portion of the negligent hiring and supervision claim arises

from anything other than L&W's use of Diuron.  The Court concludes that the negligent hiring and supervision claim falls under the second prong of the policies' pollution exclusion.  Therefore, based on the allegations in the underlying complaint, Nationwide does not have a duty to defend in the underlying case.

"The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify." *Nova Casualty Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1332 (S.D.Fla. 2006) (citing *Fun Spree Vacations, Inc. v. Orion Ins.*, 659 So.2d 419, 421 (Fla. 3d DCA 1995)).  Defendant Lang argues, however, that because the duty to indemnify depends upon proven facts, unlike the duty to defend which depends on the facts asserted in the underlying complaint, Nationwide may still have a duty to indemnify even without a duty to defend.  *See Hagen v. Aetna Cas. and Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996) ("[r]egardless of the allegations of the complaint, it is the underlying facts that determine the *duty to indemnify*") (emphasis in original).  Although this argument is logical at first blush, it is without merit.  The facts that the underlying plaintiff must prove in order to obtain a judgment against the insured—a judgment to which a duty to indemnify applies—are the facts alleged in the underlying complaint.  Defendant Lang asserts that the underlying plaintiff might win a judgment against Lang in the underlying trial even if the facts proved at trial show that the property damage was caused by something other than Diuron.  However, in the event that the underlying plaintiff proves facts in the underlying trial that are different from the facts in the underlying complaint yet nevertheless still give rise to liability, the underlying complaint will be amended and a duty to defend and indemnify may attach at that point.  *See id*.  With the operative underlying complaint as it currently stands, however, the insurer's lack of a duty to defend means there is no duty to

indemnify. *See Nova*, 424 F. Supp. 2d at 1332. Therefore, it is hereby:

**ORDERED and ADJUDGED** that

1. Plaintiff's Motion for Summary Judgment **(D.E. No. 22)** is GRANTED.

2. Defendant's Motion for Summary Judgment on Duty to Defendant **(D.E. No. 23)** is DENIED.

3. Final Judgment will be entered by separate order. This case is CLOSED, and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, October 6, 2010.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record